UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TECK METALS LTD., a Canadian corporation,<br>25 Aldridge Avenue<br>Trail, BC V1R 4L8<br>                Plaintiff,<br><br>vs.<br><br>UNITED STATES BUREAU OF INDIAN AFFAIRS<br>MS-4606-MIB<br>1849 C Street N.W.<br>Washington, DC 20240<br>                Defendant. | Civil Action No. |

**PLAINTIFF TECK METALS LTD.'S MOTION TO COMPEL DEFENDANT
BUREAU OF INDIAN AFFAIRS' COMPLIANCE WITH
<u>SUBPOENA TO PRODUCE DOCUMENTS</u>**

**<u>INTRODUCTION & SUMMARY</u>**

Plaintiff Teck Metals Ltd. ("Teck") respectfully submits this motion, pursuant to Federal Rule of Civil Procedure 45, for an order to compel the United States Bureau of Indian Affairs ("BIA") to comply with Teck's May 20, 2014 subpoena for documents issued in connection with *Pakootas v. Teck Metals Ltd.* (C.A. CV-04-256), a civil action pending in the United States District Court for the Eastern District of Washington.

The subpoena directs BIA to produce documents that are highly relevant to Teck's defense in *Pakootas, et al. v. Teck Metals Ltd.* As set forth more fully below, BIA has improperly refused to comply with this subpoena and therefore should be ordered to do so.

**<u>FACTUAL BACKGROUND</u>**

Teck is the defendant in *Pakootas, et al. v. Teck Metals Ltd.* The Confederated Tribes of the Colville Reservation ("CCT"), a plaintiff in that action, seeks to recover from Teck alleged

"response costs" related to litigation over environmental conditions at the Upper Columbia River/Lake Roosevelt site in northeastern Washington State under section 107(a)(4)(A) the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* A significant issue in that lawsuit is the extent to which CCT may be seeking to recover from Teck certain CCT litigation attorneys' and expert fees, costs and other expenses previously funded by grant money from the BIA (and other federal agencies) during the period from 1998 to the present. Declaration of Amanda Halter, ¶3 ("Halter Decl.").

Given this issue, Teck formally sought BIA's production of information and documents related to BIA's grant funds to CCT pertaining to the Upper Columbia River/Lake Roosevelt site and environmental litigation. First, Teck issued a Freedom of Information Act ("FOIA") request to BIA on November 7, 2013. Halter Decl., Ex. B. On December 18, 2013, in response to telephone inquiries by Teck's counsel, BIA represented that responsive documents had been gathered and were being reviewed for production. Halter Decl., ¶ 5. BIA further represented that it would contact counsel with an expected timeframe for its response but that it "would not be a long time." Halter Decl., ¶ 5. Several more months passed, but BIA produced no responsive documents despite repeated follow-up on inquiries. Halter Decl., ¶¶ 6-7.

Due to BIA's failure to timely respond, on April 22, 2014, Teck's counsel lodged a FOIA appeal with the Department of the Interior ("DOI"), BIA's parent agency. Halter Decl., Ex. C. DOI took no action on the appeal. Halter Decl., ¶ 8.

In response to DOI's and BIA's repeated failures to comply with the information request on May 20, 2014, Teck's counsel issued the subject subpoena. Halter Decl., Ex. A. The subpoena seeks essentially the same documents sought in the FOIA request, except that the

2

subpoena revised the start of the responsive timeframe from 1988 to 1998. Specifically, Teck subpoenaed from BIA the following:

1. Any and all applications or requests submitted to BIA, or any division or related agency thereof, by the Confederated Tribes of the Colville Reservation (CCT) or the Spokane Tribe of Indians (STI), or any individual members thereof, for grant funding for the cost of litigation in connection with the alleged releases of hazardous substances at sites in the State of Washington, including specifically but not limited to, the Upper Columbia River/Lake Roosevelt Site.

2. Any and all applications or requests submitted to BIA, or any division or related agency thereof, by CCT or STI, or any individual members thereof, for grant funding for the cost of response activities or natural resource damages-related activities in connection with the alleged releases of hazardous substances at the Upper Columbia River/Lake Roosevelt Site in the State of Washington.

3. All correspondence in BIA's possession, custody or control, including notices of awards, related to the grant applications or requests referenced in the foregoing paragraphs 2 and 3.

4. All documents, including specifically payment and accounting records, pertaining to any grants awarded from January 1, 1998 to the present to CCT or STI to cover the cost of environmental litigation or to cover the cost of response activities or natural resource damages-related activities in connection with the alleged releases of hazardous substances at the Upper Columbia River/Lake Roosevelt Site, and all documents showing the dates on which, in what amounts, and/or for what purposes the funds were allocated or distributed to CCT or STI.

5. All communications concerning the receipt, disbursement and allocation of any funds awarded by BIA to CCT or STI to cover the cost of environmental litigation and/or to cover the cost of response activities or natural resource damages-related activities in connection with the alleged releases of hazardous substances at the Upper Columbia River/Lake Roosevelt Site.

Halter Decl., Ex. A.

The subpoena was properly noticed and served. *See* Halter Decl., Ex. A. As BIA has its main offices in Washington, D.C., the place of compliance for the subpoena was set in Washington, D.C. at Pillsbury Winthrop Shaw Pittman LLP's (counsel for Teck) former offices located at 2300 N. Street, NW, Washington, D.C. 20037. *See* Fed. R. Civ. P. 45(c). BIA's compliance deadline under the subpoena was June 3, 2014. *See* Halter Decl., Ex. A. The

deadline came and went. BIA initiated no contact with Teck's counsel in response to the subpoena, served no objections or motion to quash, and instead, continued its pattern of non-compliance with Teck's legitimate information request. Halter Decl. ¶ 10.

Despite BIA's silence in the face of two separate legal obligations to produce responsive documents – first, the FOIA request and second, the subpoena – Teck's counsel's office continued to follow-up with BIA seeking an informal resolution to BIA's recalcitrance. These additional efforts at achieving BIA's compliance were to no avail. Halter Decl. ¶ 11.

Finally, apparently irritated by Teck's counsel's persistence, on June 25, 2015, Mr. Michael Berrigan, an attorney in the Office of the Solicitor (for the DOI), called undersigned counsel's office and spoke with former paralegal Mitzie Webb. Halter Decl. ¶12. Mr. Berrigan told her, "It is not my job to tell a law firm how to properly serve a subpoena but you need to read 43 CFR part 2 subpart L. When we get proper service we will respond. You have been calling and emailing my office and enough is enough." He then hung up before she could respond. Halter Decl. ¶12.

On July 7, 2014, Teck's counsel responded to Mr. Berrigan via letter, which in substance stated that the BIA regulations Mr. Berrigan had cited to Ms. Webb did not obviate the federal agency's obligations to comply with the subpoena and reiterated counsel's expectations that the agency would promptly comply with the subpoena. Halter Decl., Ex D.

Finally, on August 20, 2014, undersigned counsel received a FedEx package from BIA'S assigned FOIA officer, Monique Hartgrove, with a partial production of documents responsive to Teck's FOIA request. Halter Decl., ¶ 14. With continued and repeated follow-up by Teck's counsel, on November 7, 2014, Ms. Hartgrove sent a handful of additional documents via email. Halter Decl., ¶ 15.

Over the ensuing months, Teck's counsel had several additional telephone calls and email exchanges with the DOI's Solicitor's Office, Ms. Hartgrove and additional FOIA personnel Daniel Largo, in an effort to work with BIA to complete its production of responsive documents. Halter Decl., ¶ 16. BIA made no further progress after November 7, 2014 and produced no further documents. Halter Decl., ¶ 16.

On December 17, 2014, Ms. Hartgrove stated in an email that there were approximately 5,200 pages of responsive records to be produced (in response to the subpoena or FOIA) but that BIA had given these records to the CCT for their review, ostensibly because they all contained confidential business information. Halter Decl., ¶ 17.

Another seven months have passed, and BIA has never produced the additional documents. Halter Decl., ¶ 17. In fact, the DOI Solicitor's Office has ceased to communicate on the outstanding FOIA request and the subpoena altogether since a final, non-responsive email communication in March 2015. Halter Decl., ¶ 18 and Exhibit E.

## POINTS & AUTHORITIES

### I. Legal Standard

Under Rule 45 of the Federal Rules of Civil Procedure, litigants may secure documents, information and things from non-parties by issuing a subpoena. Fed. R. Civ. P. 45(a), (b). The scope of civil discovery under Rule 26 also applies to non-party subpoenas under rule 45. *See, e.g., Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011); *Rendon Group, Inc. v. Rigsby*, 268 F.R.D. 124, 126 (D.D.C. 2010) ("Rule 26 of the Federal Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and therefore, Rule 45 must be read in light of it."). Rule 26(b)(1) provides that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense..." Fed. R. Civ. P 26(b)(1). Therefore, federal courts recognize that the "scope of discovery in civil actions is broad [and the] term relevance at the discovery stage is [to be] broadly construed . . . ." *Convertino v. U.S. Dept.*

*of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008). The court is empowered to compel compliance with subpoenas. Fed. R. Civ. P. 45(g); *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998). Therefore, with respect to a Rule 45 subpoena, "'[a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (citation omitted).

Pursuant to Federal Rule of Civil Procedure 45, this Court has jurisdiction over this motion. Fed. R. Civ. P. 45(g).

## II. BIA Should be Compelled to Comply with the Subpoena.

### A. The subpoena seeks relevant documents and is not overly burdensome.

In substance, Teck seeks documents that will allow it to evaluate whether and to what extent the CCT may have received grant funds covering expenses it now seeks to recover against Teck in the *Pakootas, et al. v. Teck Metals Ltd.* lawsuit. Starting with its initial disclosures of damages sought, CCT has claimed that it is not seeking recovery for expended costs that were funded by federal grants, including grants from BIA. However, due to apparent accounting and documentation failures, CCT has had to revise the amount it is claiming from Teck Metals Ltd. at least six times to deduct expenses subsequently revealed to have been funded by federal grants, including grants from BIA. Halter Decl., ¶ 20. The Tribes' designated expert even had to revise his initial report to make these adjustments: "Based on our review we have made adjustments to eliminate expenditures which were funded by grant monies." Halter Decl., Ex. F, Partial Rebuttal Report of Wiley R. Wright, III, CPA, (Tribes' expert) May 1, 2015, §III.F, responding to report of Raymond Dovell showing claims for amounts previously paid for by federal grants.

CCT has had to make such adjustments as recently as its Ninth Supplemental Disclosures

6

in that suit on April 16, 2015. Halter Decl., ¶ 21. BIA's documents related to CCT's receipt and use of grant funds are plainly directly relevant to the *Pakootas* litigation, as they are likely to either corroborate CCT's claims, or show that CCT is still claiming entitlement reimbursement from Teck Metals Ltd. expenses already funded by BIA.

Moreover, based on BIA's representations that it has already identified and gathered the approximately 5,200 pages of responsive documents, it is apparent that the subpoena is not overly burdensome.

### B. BIA has waived any objections by failing to timely respond.

A nonparty may respond to a Rule 45 subpoena by "serv[ing] on the party or attorney designated in the subpoena a written objection" which "*must* be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B) (emphasis added). To date, BIA has provided no written response to the subpoena. Halter Decl., 19. And, to the extent BIA may have any objections to the subpoena, its failure to respond effects a waiver of those objections. *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citation omitted) ("'The failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.'").

### C. BIA's *Touhy* regulations do not exempt the agency from subpoena compliance.

BIA may direct the Court's attention to the agency's specific "*Touhy*"[1] regulations, which govern how federal employees should respond to subpoenas. See 43 C.F.R. §§ 2.280, 2.281.

---

[1] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (recognizing that federal agency heads have the authority to withdraw from federal agency subordinates the power to release government documents and information); *see also* 5 U.S.C. § 301 ("The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.").

7

BIA may argue that, according to its regulations, "[n]o Department employee may testify or produce records in any proceeding . . . unless authorized by the Department." 43 C.F.R. § 2.281(b). Setting aside the fact that there is no legitimate reason the Department should fail to authorize the production of responsive documents in this instance, *Touhy* is no excuse for non-compliance. *Touhy* regulations do not provide agencies with carte blanche authority to keep documents and information from the public, and such regulations cannot be used to bar the production of documents or testimony of witnesses in a federal case. See *Houston Bus. Journal, Inc. v. Office of Comptroller*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

Courts have consistently held that federal agencies are not exempt from complying with federal subpoenas issued by federal-court litigants. As the D.C. Circuit has held:

> A federal-court litigant . . . can seek to obtain the production of documents from a federal agency by means of a federal subpoena. In federal court, the federal government has waived its sovereign immunity . . . and neither the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court. . . . To the extent that the Comptroller's regulation . . . may be to the contrary, it conflicts with the Federal Rule of Civil Procedure 45 and exceeds the Comptroller's authority under the Housekeeping Statute.

*Id.* at 1212 (citing *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774 (9th Cir. 1994) (standing for the proposition that the Federal Housekeeping Statute does not completely supplant a federal agency's obligation to respond to a valid subpoena). This Court has followed the rule established in *Houston Business Journal*. See *In Re Apollo Group, Inc. Sec. Litigation*, No. CV-04-2147-PHX-JAT, 2007 WL 778653, at *6 (Mar. 12, 2007) (recognizing a federal agency's obligation to respond to a federal subpoena issued by a federal-court litigant). *See also Exxon Shipping*, 34 F.3d at 778-79 (reiterating that "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers" (quoting *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953)).

Simply stated, federal agencies cannot hide behind their own regulations to avoid the production of documents that are subpoenaed in a federal court case. In any case, BIA's partial production of documents, as well as the lateness of its response, shows that it has abandoned whatever *Touhy* objections it may have had.

### D. Insofar as the documents sought contain confidential information, a confidentiality agreement, rather than non-compliance, is the proper course of action.

BIA has suggested that the responsive documents may contain confidential business information of CCT or other tribes. Even if BIA were to substantiate such a claim of confidentiality, however, it would not necessarily relieve the Agency of its obligation to comply with Teck's information requests. *Federal Trade Comm'n v. Lonning*, 539 F.2d 202, 209 (D.C. Cir. 1976) (There is no absolute immunity protecting a party from the disclosure of trade secrets); *see also Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 999 (10th Cir. 1965). Where, as here, "the request is relevant, not overly broad, and not unduly burdensome, [the requesting party] is entitled to the responsive information." *Lamoureux v. Genesis Pharmacy Serv., Inc.*, 226 F.R.D. 154, 162 (D. Conn. 2004).

BIA also bears the burden of substantiating its claim of confidentiality, not Teck. *Id.* (A requesting party "need not also establish that the information is *not* confidential.") (emphasis in original). The final determination of whether documents are confidential is judicial; a party may assert that material should be classified as confidential, but its classification is not binding on a court. *See Chemical Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91, 94 (S.D.N.Y. 1994).

If BIA is able to convince this Court that the requested information is in fact confidential business information, disclosure may still proceed with adequate safeguards. "The need for the information is held paramount but reasonable protective measures are supplied to minimize the effect on the appellants." *Lonning*, 539 F.2d at 209. Fed. R. Civ. P. 26(c), for example, provides

9

that a party from whom discovery is sought may move for a protective order. The court may order either that the information "not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "The comments to this rule acknowledge the limited protection provided under the rules for this category of information. 'The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. . . .'" *Morton v. Cooper Tire & Rubber Co.*, 288 F.R.D. 126, 128 (N.D. Miss. 2012).

> In fact in "most cases the key issue is not whether the information will be disclosed but under what conditions, as the Supreme Court has recognized. * * * Orders prohibiting "any disclosure of trade secrets and confidential commercial information are rare." . . . A showing of general relevancy and of need has been held sufficient to require the disclosure of trade secrets.

*Id.* at 131; *see also MacKey v. IBP, Inc.*, 167 F.R.D. 186, 196 (D. Kan. 1996) ("Confidentiality may occasion a protective order, pursuant to Fed. R. Civ. P. 26(c), to restrict the use of requested information. Confidentiality, however, does not necessarily bar discovery.").

Not having seen the documents at issue, Teck cannot comment on the veracity of the assertion that some documents may be confidential. If it is true that the subpoenaed documents contain confidential business information, however, BIA's proper mechanisms for protecting such information is a protective order or a confidentiality agreement.[2] Non-compliance with a properly issued federal subpoena is wholly inappropriate.

E. **BIA will not comply with the subpoena absent a court order.**

Teck has demonstrated diligence and patience in seeking BIA's compliance with the May 2014 subpoena (and its October 2013 FOIA request seeking the same information) for more than a year. BIA's partial production indicates that its *Touhy* regulations do not explain its non-compliance, and such regulations are not a justification for non-compliance in any case. The

---

[2] *See, e.g.*, Halter Decl., Ex. G, Signed Stipulated Protective Order in *Pakootas v. Teck.*

request is not overly burdensome, as indicated by BIA's determination that it had already identified the approximately 5,200 pages in responsive documents and produced them to the Tribes. BIA's continued non-compliance with the subpoena, and its current silence on that matter, demonstrates that it does not intend to comply absent a court order.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court compel the Bureau of Indian Affairs to comply with the subpoena by producing all responsive documents within ten days of the Court so ordering.

DATED this 24th day of August, 2015.

/s/ *Matthew Morrison/pk*
Matthew W. Morrison
D.C. BAR NO. 436125
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-8000
Facsimile No.: (202) 663-8007

Attorney for Teck Metals Ltd.

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2015, the foregoing Plaintiff, Teck Metals Ltd's Motion to Compel Defendant, Bureau of Indian Affairs' Compliance with Subpoena to Produce Documents, Declaration of Amanda Halter in Support of Teck's Motion to Compel Bureau of Indian Affairs' Compliance with Subpoena to Produce Documents, and the Proposed Order were filed with the Clerk of District Court by hand delivery and a copy was served by United States Postal Service and electronic service upon:

Michael Berrigan, Esq.
Bureau of Indian Affairs
MS-4606-MIB
1849 C Street N.W.
Washington, DC 20240
Email: michael.berrigan@sol.doi.gov

Gabriel D. Lohr
Attorney-Advisor, Branch of General Legal Services
Division of General Law, Office of the Solicitor
U.S. Department of the Interior
1849 C Street N.W.
Washington, DC 20240
Email: gabriel.lohr@sol.doi.gov

Frederick Phillips
U.S. Department of Justice
Environmental Enforcement Section
601 D Street N.W.
Washington, DC 20004
Email: frederick.phillips@usdoj.gov

/s/ *[signature]*
Matthew W. Morrison
Attorney for Teck Metals Ltd.